CRETE EDUCATION ASSOCIATION, AN UNINCORPORATED ASSOCIATION, APPELLEE, V. THE SCHOOL DISTRICT OF CRETE, IN THE COUNTY OF SALINE, IN THE STATE OF NEBRASKA, A POLITICAL SUBDIVISION, APPELLANT.

226 N. W. 2d 752

Filed March 6, 1975. No. 39521.

Nelson, Harding, Marchetti, Leonard & Tate, William A. Harding, and Gerald J. Hallstead, for appellant.

Theodore L. Kessner of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Appellant School District of Crete appeals to this court from an order entered by the Court of Industrial Relations on February 28, 1974, following protracted litigation between the appellant school district and the appellee, Crete Education Association. The litigation referred to involved the salary schedule and other terms and conditions of employment of all certificated teachers employed by the school district, for the 1972-73 school year. Practically all the school teachers referred to were members of the appellee association which was the bargaining representative for the teachers in this industrial dispute. The salary schedule employed by appellant school district for the 1972-73 school year is reflected on exhibit 6, received in evidence at the trial, and was computed on a base of $6,600, with index increments of 4

percent vertically and 4 percent horizontally. In its order entered February 28, 1974, the Court of Industrial Relations modified the existing schedule and provided that the rates of pay for certificated teachers employed by the School District of Crete "be and they hereby are established in accordance with an index salary schedule having a base of $6,775.00, index increments of 4% vertically and 4% horizontally, and the same number of steps and columns as the schedule recognized at the time of trial of this action" (exhibit 6). In addition to said increase in pay, the court also required that the appellant furnish to each of said teachers such income protection insurance as is currently available at an average cost of $5 per teacher per month. The foregoing were the only changes ordered by the court, although other changes in terms and conditions of employment were requested by the teachers and were issues involved in the trial of this action.

In this appeal, the appellant has limited its assignments of error to the claims that the order of the Court of Industrial Relations, referred to above, was erroneous and was in contravention of the provisions of section 48-817, R. R. S. 1943, prohibiting the issuance of retroactive orders; and also that the Court of Industrial Relations, in reaching its conclusions and decisions in this matter, used as a basis for comparison purposes certain other school districts which were not comparable to the appellant school district, and failed to consider various other school districts which it claimed had distinct similarity to the appellant school district. Although numerous other issues were involved and contested in the trial of this case and were, in fact, discussed in the briefs of both parties, we shall only consider the matters assigned as error by appellant. McClellan v. Dobberstein, 189 Neb. 669, 204 N. W. 2d 559 (1973). We conclude that the contentions of the appellant are without merit and affirm.

On March 30, 1972, the appellee, an unincorporated

association of school teachers, filed a petition in the Court of Industrial Relations under the authority contained in section 48-810, R. R. S. 1943. In its petition it alleged the existence between the appellant and appellee of an "industrial dispute," within the meaning of section 48-801, R. R. S. 1943, concerning the terms, tenure, and conditions of employment, and the association of and representation of the members of the appellee in such industrial dispute. It also alleged the refusal of appellant to negotiate such terms and conditions with the appellee, and the consequent exhaustion of their remedies under the terms of the Nebraska Teachers' Professional Negotiations Act. §§ 79-1287 to 79-1295, R. R. S. 1943. In its petition the association prayed that the court accept jurisdiction of the matter, give such notice as required by law to the school district, make such findings of fact and render such orders as are necessary and appropriate to define industrial dispute existing between the parties and render such orders as are necessary and appropriate *"to resolve the industrial dispute,"* including orders concerning the recognition of the association by the school district as the employee organization representing its members for the purpose of negotiating collectively terms and conditions of employment, and the issuance of such orders as are necessary or appropriate to require the parties to enter into good faith negotiations *"for the purpose of defining and eliminating the industrial dispute"* which presently exists, all as is required by the statutes of the State of Nebraska. (Emphasis supplied.) On January 8, 1973, the Court of Industrial Relations issued a temporary bargaining order by the terms of which the parties were ordered to undertake good faith bargaining concerning the terms, tenure, and conditions of employment of the certificated teachers in the employ of the appellant. The order specifically provided that: "This Temporary Bargaining Order shall not preclude either party from making application to this Court for such additional order or

orders as may be necessary to carry out this Order or to govern the situation pending such bargaining." Appellant continued to resist any efforts by appellee to negotiate the terms and conditions of employment as called for in that order; and therefore on February 15, 1973, the appellee filed an application requesting that the court enter its final orders, pursuant to section 48-818, R. R. S. 1943, establishing the terms and conditions of the employment of the members of the appellee employed by the appellant for the 1972-73 school year. The matter was thereafter set for trial pursuant to the application of the appellee, following which the court entered its order of February 28, 1974, previously referred to, which is the basis of this appeal.

The appellant asserts that the order of February 28, 1974, is in contravention of section 48-817, R. R. S. 1943, in that it applies retroactively to the 1972-73 school year. Section 48-817, R. R. S. 1943, provides in part: "After the hearing and investigation the court shall make its findings and enter its order or orders in writing, which decision and order or orders shall be entered of record. Such order or orders shall be in effect from and after the date therein fixed by the court, but no such order or orders shall be retroactive." Thus, the appellant contends that section 48-817, R. R. S. 1943, must be construed as precluding an order of the Court of Industrial Relations from being retroactive in any way, even in the sense of being retroactive to the date of the filing of the original petition with the court. We do not agree.

It is a cardinal principle that statutes pertaining to the same subject matter should be construed together as if they were one law, and effect given to every provision. Livestock Carriers Div. of M. C. Assn. v. Midwest Packers Traf. Assn., 191 Neb. 1, 213 N. W. 2d 443 (1973). We believe that consideration of the entire statutory scheme of Chapter 48, article 8, R. R. S. 1943, pertaining to the Court of Industrial Relations, clearly

establishes that the interpretation of section 48-817, R. R. S. 1943, advanced by the appellant is incorrect. Primarily, we are concerned that the interpretation advanced by the appellant would to a large extent have the effect of depriving the Court of Industrial Relations of the power granted to it by section 48-810, R. R. S. 1943, to carry out the public policy announced in section 48-802, R. R. S. 1943.

Section 48-802, R. R. S. 1943, provides in part: "It is therefore further declared that governmental service including governmental service in a proprietary capacity and the service of . . . public utilities are clothed with a vital public interest and to protect same it is necessary that the relations between the employers and employees in such industries be regulated by the State of Nebraska to the extent and in the manner hereinafter provided; . . . ." The basic grant of power to carry out the public policy expressed in section 48-802, R. R. S. 1943, is contained in section 48-810, R. R. S. 1943, which provides in part: "*All industrial disputes* involving governmental service, service of a public utility, or other disputes as the Legislature may provide *shall be settled* by invoking the jurisdiction of the Court of Industrial Relations. . . ." (Emphasis supplied.)

The import of these two provisions is obvious. The Court of Industrial Relations is empowered, upon acquiring jurisdiction, to enter such orders as are necessary to settle all "industrial disputes" (as that term is defined by sections 48-801 (7) and 48-810, R. R. S. 1943). If we were to agree with appellant's contention that all orders of the Court of Industrial Relations must be prospective in operation, we would be depriving that court of its ability to settle industrial disputes where a retroactive order is required to accomplish that purpose.

That the Court of Industrial Relations was intended by the Legislature to have such power is supported by the language appearing in section 48-816, R. R. S. 1943: "The court shall have power and authority upon its own

initiative to make such temporary findings and orders as may be necessary to preserve and protect the status of the parties, property and public interest involved, pending final determination of the issues." This language clearly indicates that the Legislature intended that the "final determination of the issues" by the Court of Industrial Relations may be made retrospective in the sense of affecting the "status of the parties" at a time prior to the date that such "determination" is made. If that were not so, then there would be no concern for temporary orders to preserve that prior status. It was undoubtedly for the purpose of preserving and protecting the status of the parties to this "industrial dispute" that the order in this case calling for collective bargaining was only a temporary order. The appellant would now have us hold that the temporary order had no such effect. Such a holding would, we believe, be contrary to the Legislative intent embodied in section 48-816, R. R. S. 1943. We cannot so hold.

In addition, appellant's interpretation of "retroactive" might well result in a situation where, during the period between the filing of the petition and the "final determination of the issues" by the Court of Industrial Relations, one side in an "industrial dispute" might be able to prevail in that dispute through nothing more than the exercise of its own superior economic power. We do not believe our Legislature so intended. We believe that the only reasonable interpretation of section 48-817, R. R. S. 1943, is that the prohibition against a retroactive order means that the orders of the Court of Industrial Relations cannot apply to a period prior to that embraced within the dispute submitted to it. In this case the dispute involved the 1972-73 school year. In its temporary order, the court directed the parties to negotiate with respect to the 1972-73 school year. The final order of the court adjusted the salary schedule for the Crete teachers for the school year 1972-73. We cannot say that the order of the court operated retroactively from

the mere fact that it related to antecedent events. See Chicago, B. & Q. R.R. Co. v. State, 47 Neb. 549, 66 N. W. 624 (1896). However, had the court attempted to apply its revised salary scales to the 1971-72 school year, a period not covered by the litigation involved herein, then we think it is clear that the order of the court would have been "retroactive" and in contravention of section 48-817, R. R. S. 1943. We therefore hold that the order of the Court of Industrial Relations of February 28, 1974, was not retroactive, as that term is used in the foregoing statute.

The appellant raises several contentions with regard to the selection by the Court of Industrial Relations of other school districts to be compared with the School District of Crete for the purpose of making the final determination establishing the rates of pay and conditions of employment of the certificated teachers employed by the appellant. Such a comparison is required and controlled by section 48-818, R. R. S. 1943, which provides: "The findings and order or orders may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same. In making such findings and order or orders, the Court of Industrial Relations shall establish rates of pay and conditions of employment which are *comparable* to the *prevalent* wage rates paid and of employment maintained for the *same or similar work* of workers exhibiting *like or similar skills* under the *same or similar working conditions*. In establishing wage rates the court shall take into consideration the overall compensation presently received by the employees, having regard not only to wages for time actually worked but also to wages for time not worked, including vacations, holidays, and other excused time, and all benefits received, including insurance and pensions, and the continuity and stability of employment enjoyed by the employees . . . ." (Emphasis supplied.)

Webster's Third New International Dictionary

(Unabr.), p. 461, defines the word "comparable" as having enough like characteristics or qualities to make comparison appropriate. However section 48-818, R. R. S. 1943, further refines the definition of "comparable" and specifies certain items to be considered in determining comparability under that section. The definition as set forth in the above section is, of course, controlling.

The appellant asserts that in selecting other districts for comparison with the School District of Crete and in actually carrying out that comparison, the Court of Industrial Relations neglected to adhere to the requirements of section 48-818, R. R. S. 1943. We do not agree.

The appellant argues that in declining to compare the School District of Crete with all the other schools in the Central Ten Athletic Conference for the purpose of establishing the rates of pay and conditions of employment in this case, the Court of Industrial Relations abandoned its previous standard for selecting comparable school districts as enunciated in the case of School Dist. of Seward Education Assn. v. School Dist. of Seward, Case No. 34, Findings and Order of August 9, 1971, affirmed 188 Neb. 772, 199 N. W. 2d 752 (1972). It is true that in the Seward case the Court of Industrial Relations, in establishing a scale of wages for teachers in the Seward School District, compared that district with all the other districts in the Central Ten Athletic Conference, at that time consisting of the schools in Albion, Aurora, Central City, Crete, David City, Ord, St. Paul, Schuyler, Seward, and York. In its opinion in that case the Court of Industrial Relations stated: "We find that in determining 'the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions', consideration should be given primarily to other schools in the Central Ten Athletic Conference, and secondarily to any 'comparable' school districts. *This finding is supported by the evidence of each of the parties in this case.*"

(Emphasis supplied.) The italicized words above quoted clearly indicate that the matter of determination of comparability depends on the evidence adduced, and we have no way of knowing what evidence of comparability was in the record in that case. We do know, however, from the record in this case that there has been a change of at least one of the member schools of that conference since that opinion was filed. However, in its opinion in this case, the Court of Industrial Relations specifically stated: "In formulating the preliminary findings relative to an order establishing or withholding establishment under § 48-818, R. R. S. Neb., we follow the guidelines developed in Fremont Education Association v. The School District of Fremont, Case No. 50, Findings and Order entered March 14, 1972, and in Scottsbluff Education Association v. The School District of Scottsbluff, Case No. 70, Findings and Order entered February 15, 1973." Both the aforementioned cases were decided subsequent to the Seward case. In the Fremont case, the court stated: "The Legislature originally intended as a standard of wage rates those which were predominate or at least widely existing throughout the whole state. Then it changed the standard to one of general practice, occurrence, or acceptance but in a very limited area; this Court, under that former standard, felt the area to be one or two counties in extent, and expressly rejected a contention in cases No. 19 and 20 that it might be all the eastern end of the state. Thereafter, in 1969 the Legislature withdrew the mandatory limitation on area, but it did not reexpress a mandatory consideration of either predominance or of existence throughout the whole state. *The standard now is one of general practice, occurrence, or acceptance, but the question of how general is general is left to the good judgment or feeling of the judges.* The requirement of similarity of working conditions helps the judges develop that judgment or a receptivity to the proper connotation of the word 'prevalent'. Similarity tends to de-

crease with increasing distance among what are to be compared and to become more pronounced with increasing proximity." (Emphasis supplied.) In deciding the case now before us, the Court of Industrial Relations expressly relied upon the standards set forth in the Fremont and Scottsbluff cases, and thus expressly adhered to the most clearly delineated standards previously adopted by that court for such purposes.

We cannot agree with the contentions of the appellant that the Court of Industrial Relations committed error in not making exactly the same comparison in this case that it did in the Seward case. The Court of Industrial Relations should not be compelled to compare the same school districts in every case that comes before it involving the same school districts. The ultimate question is whether, as a matter of fact, the school districts selected for comparison are sufficiently similar to the subject district to fulfill the requirements of section 48-818, R. R. S. 1943, If they are, then there is no room for complaint. We are not prepared to say that merely because one set of school districts was deemed adequate in one case, a different set of school districts would necessarily be inadequate in a different case, particularly where different evidence is adduced.

The appellant suggests that under section 48-818, R. R. S. 1943, the Court of Industrial Relations should have selected comparable school districts from a wider geographical area than that resorted to in this case. As previously indicated, in deciding this case the Court of Industrial Relations adhered strictly to the standard for selecting comparable wage rates and conditions of employment as set forth in Fremont Education Assn. v. School District of Fremont, Case No. 50, March 14, 1972. Thus, in this case the Court of Industrial Relations examined only school districts within 60 miles of Crete and expressly refused to consider the wage rates and conditions of employment in certain other school districts for the reason that they were "too small and too distant."

Although we cannot say, as a matter of fact, that selection of comparable school districts from such a limited geographical area would be proper in every case, we also cannot say, as a matter of law, that it would be improper in this case. Thus, we are unable to agree with the appellant's contention that section 48-818, R. R. S. 1943, should be interpreted to compel the selection of comparable wage rates and conditions of employment from a wider geographical area. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning, and this court cannot read a meaning into a statute which is unrelated by legislative language, nor can it read plain, direct, and unambiguous language out of a statute. State v. Sabin, 184 Neb. 784, 172 N. W. 2d 89 (1969). Section 48-818, R. R. S. 1943, cannot be said to be ambiguous with respect to the point of interpretation herein raised by the appellant. The words of that statute provide absolutely no support for the interpretation of the appellant calling for comparable wage rates and conditions of employment to be selected from a wider geographical area. Thus, again we are left with the ultimate question of whether, as a matter of fact, the school districts selected for comparison in this case are adequately similar to the subject district to fulfill the requirements of section 48-818, R. R. S. 1943.

In this connection it is also interesting to note that an expert witness, Richard Halma, called by appellee, testified that he was employed by the Nebraska State Education Association to assist affiliated associations in the areas of research and preparation of materials, and that exhibit 8, received in evidence, was prepared by him or under his direction. Exhibit 8 is entitled "1972-73 Salary And Fringe Benefit Data For Crete" and contains the list of schools in other cities he deemed to be comparable to Crete. It is interesting to note that 7 of the 10 schools used for comparison purposes in this litigation by the Court of Industrial Relations, appear on

exhibit 8. Witness Halma, in his testimony, expressed his opinion that the work performed by teachers in the Crete schools was comparable to that performed by teachers in the schools shown on exhibit 8; that the skill required of the Crete teachers was comparable to that required of teachers teaching in schools shown on exhibit 8; and, further, that working conditions for the Crete schools were comparable to the working conditions of teachers employed in the schools shown on exhibit 8. He also testified with regard to exhibit 8 that he had not attempted in the preparation of it to show every school which might meet the necessary criteria.

The appellant suggests that even if the Court of Industrial Relations properly selected the school districts to be compared with the School District of Crete for the purpose of making the final determination regarding the wage rates and conditions of employment in this case, the court nevertheless erred in the method of comparison used. Thus, the appellant points out that the Court of Industrial Relations, after first comparing the base salaries paid by the appellant with that of the other districts, then went on to compare the fringe benefits of the different districts in an item-by-item manner. The appellant maintains that such a manner of comparison is not consistent with the provision of section 48-818, R. R. S. 1943, requiring that: "In establishing wage rates, the court shall take into consideration the *overall compensation* presently received by the employees . . . ." (Emphasis supplied.) In particular, the appellant argues that although it may be found to compare unfavorably with other school districts with respect to some fringe benefits available to its employees, such unfavorable comparison may be offset by a superior comparison with other districts in relation to other benefits that are available.

The appellant is, of course, correct in its contention that the Court of Industrial Relations, in establishing wage rates, is compelled by section 48-818, R. R. S.

1943, to consider the entire situation regarding the fringe benefits made available by the subject school district and those made available by comparable school districts. In other words, the Court of Industrial Relations is required to offset possible unfavorable comparisons between districts with other comparisons which are favorable when reaching its decisions establishing wage rates. However, we believe in this case, the Court of Industrial Relations did make the "overall" consideration called for in section 48-818, R. R. S. 1943.

Having determined that the schools used for comparison purposes by the Court of Industrial Relations were proper, we need only determine whether its adjustments in the base rate to be paid to Crete teachers for the 1972-73 school year were justified by the evidence. As previously stated, that court increased the base pay for the year in question by $175 per annum and also ordered the payment of $5 per month for income protection insurance. We have reviewed the rather voluminous documentary evidence and have also analyzed the reasoning of the court in making such allowances set out in its opinion, and have made an independent conclusion that the modifications ordered by the court were entirely proper and supported by the evidence. It appears from the record that the Court of Industrial Relations in this case established the new salary base for the teachers at the approximate midpoint of the total compensation paid by the schools selected by it for comparison, according to its customary practice. The result reached would appear to be fair, proper, and equitable and in full accord with the discretionary powers vested in that court.

We are aware that section 48-812, R. R. S. 1943, provides that appeals from the Court of Industrial Relations shall be heard and disposed of in the Supreme Court in the manner provided for by law for disposition of equity cases, and further that section 25-1925, R. R. S. 1943, directs that this court shall handle an appeal in

equity as a trial de novo on the record. However. we are also cognizant of the language of this court in Mid-Plains Education Assn. v. Mid-Plains Nebraska Tech. College, 189 Neb. 37, 199 N. W. 2d 747 (1972), wherein we stated: "Before examining the facts upon which this decision is based, it is appropriate to discuss the scope of our review. An appeal from the Court of Industrial Relations is triable de novo in this court. §§ 25-1925 and 48-812, R. R. S. 1943. This does not mean that we are powerless to examine the conclusions of fact in the lower court. Wiese v. Klassen, 177 Neb. 496, 129 N. W. 2d 527. This court has held many times that even when the case is triable de novo, the superior position of the original trier of fact is to be respected and accorded great weight." We affirm the order of the Court of Industrial Relations in this case.

AFFIRMED.