GENERAL DRIVERS AND HELPERS UNION, LOCAL 554,
APPELLEE, V. CITY OF WEST POINT, NEBRASKA,
APPELLANT.

281 N. W. 2d 772

Filed July 31, 1979. No. 42300.

Nelson & Harding and Roger J. Miller, for appellant.

David D. Weinberg of Weinberg & Weinberg, P.C., for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Petitioner-appellee, a labor union (Union) and the certified collective bargaining agent for most of the employees of the respondent-appellant, City of West Point, filed its petition in the Court of Industrial Relations (CIR) on July 1, 1977, alleging that the parties had attempted, without success, to negotiate an agreement as to wages, hours, and conditions of employment, thereby creating an industrial dispute as defined in the Court of Industrial Relations Act, sections 48-801 et seq., R. R. S. 1943. After a hearing, the Court of Industrial Relations entered an opinion and order dated July 26, 1978, establishing wages for certain linemen, light plant operators, sewage

treatment plant operators, and street laborers effective August 1, 1976-77 and August 1, 1977-78. The City of West Point has appealed to this court.

The City's primary complaint as expressed in its assignments of error is that the CIR had no authority to conduct its own investigation as to wage comparability after Union had failed to sustain its burden of proof on that issue, and because of such failure, the case should have been dismissed. We agree.

Union, through two employees of the City and an international representative of another union, offered evidence of wages being paid certain employees of the City together with a description of the various jobs as compared with the cities of Fairbury, Beatrice, Grand Island, Fremont, and Cuming County, covering both years involved, except that Cuming County was not used for the year 1977-78. The populations of the City of West Point and the various political subdivisions in the array listed above were 3,385, 5,265, 11,600, 31,200, 23,900, and 11,817 respectively. The various job descriptions furnished by the witnesses were at best vague and indefinite. The two witnesses, employees of the City, who were the electric line foreman and light plant foreman respectively, were able to give comprehensive descriptions of those two job areas. However, they knew little about the duties of the street laborers or sewer treatment employees other than what might be expected of the average man on the street. The other witness, the union representative, had virtually no independent knowledge of the job skills for the various job descriptions, particularly for linemen and street laborers, and merely stated that street laborers repair the streets and keep them clean. It could be said without much argument that Union simply obtained wage information from the various cities by job title only without reference to job descriptions, skills, or requirements. Neverthe-

less, where as here the job titles were in and of themselves rather descriptive, we are not that concerned with the absence of a more detailed recitation of the nature of the jobs. However, there was no evidence offered of fringe benefits paid by the units within the array, nor was there anything from which any conclusion could be drawn either as to the labor market, job opportunities, or work opportunities anywhere.

In our review of orders and decisions of the Court of Industrial Relations, we are restricted to considering whether the order of that agency is supported by substantial evidence justifying the order made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. Metro. Tech. Com. Col. Ed. Assn. v. Metro. Tech. Com. Col. Area, 203 Neb. 832, 281 N. W. 2d 201 (1979).

The opinion and order of the CIR contained the following language: "Petitioner offers two arrays * * * We find these comparables, properly adjusted, to be sufficient to carry the petitioner's burden of showing that West Point wages are not comparable to the prevalent. * * * For our own convenience, however, we prefer to operate in an array where we need not make continual and complex adjustments. Where the parties have not presented evidence deemed sufficient properly to appraise the value of the particular labor before it, the court may *sua sponte* direct the production of other or different evidence in order that it may properly execute its duty to protect the public interest and reach an accurate conclusion. * * * Executing this duty as empowered by the Legislature under § 48-817, R. R. S. 1943, we have had data produced on the various job classifications in cities in the state operating their own generation plants and within a population range of 2,000 to 3,850 to add to petitioner's proffered comparables."

The data referred to by the CIR was incorporated into two orders which were made a part of the tran-

script and copies of which were sent to both parties with notice that each would have 5 days to challenge, contradict, or rebut such information. The question we are called upon to decide is whether the CIR is empowered to go out in the first instance and conduct an investigation as to whether a particular wage is comparable to the prevalent, or whether it is entitled only to utilize this method to supplement and refine evidence which it finds to be sufficient, but not altogether satisfactory.

As we stated in Lincoln Fire Fighters Assn. v. City of Lincoln, 198 Neb. 174, 252 N. W. 2d 607 (1977), "* * * the burden is on the moving party in a section 48-818, R. R. S. 1943, case, to demonstrate that existing wages are not comparable to the prevalent wage rate, * * *." It is obvious that to do this it was necessary for Union first to establish by the evidence what were "the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions." § 48-818, R. R. S. 1943. In making this comparison it is necessary to take into consideration not only the wages for time actually worked but also wages for time not worked, including vacations, holidays, and other excused time; all other benefits received including insurance and pensions; and the continuity and stability of employment. "This was not done in this case as no evidence was presented on fringe benefits received by the firemen in those cities used for comparison." Lincoln Fire Fighters Assn. v. City of Lincoln, *supra*. See, also, Crete Education Assn. v. School Dist. of Crete, 193 Neb. 245, 226 N. W. 2d 752 (1975).

With the exception of Fairbury, the municipalities tendered in Union's array were from over 3 to nearly 10 times the size of the City of West Point. Fairbury, retained by the CIR to construct its array, was almost twice as large. This is not to say that

such cities could not have been used if there was evidence of the labor market generally in those locations establishing comparable conditions. Beyond that, and perhaps of even more significance, is the finding of the CIR itself that "We find these comparables, *properly adjusted,* to be sufficient to carry the petitioner's burden of showing that West Point wages are not comparable to the prevalent." (Emphasis supplied.) The CIR is saying that the evidence presented, without adjustment, was not sufficient to carry Union's burden. We are in complete agreement with this position. However, there is nothing in the record to indicate what adjustment was made. This was a critical finding to have been made, and to permit it to stand without support in the record would eliminate the requirement of burden of proof. While this position may seem to exalt form over substance, it must be remembered that the CIR's sole function is to settle industrial disputes, and the principal onus in producing evidence is on the parties. The adversary nature of proceedings has been preserved in the CIR by the Legislature in providing that proceedings shall conform to the code of civil procedure applicable to District Courts, section 48-812, R. R. S. 1943; by the decision of this court as to burden of proof, Lincoln Fire Fighters Assn. v. City of Lincoln, *supra*; and, for that matter, by the procedures adopted and followed by the CIR itself. The result is that the CIR cannot, in a section 48-818, R. R. S. 1943, case, obtain evidence on its own motion unless the moving party has first made a prima facie case by satisfying the burden of proof of establishing noncomparability with prevalent conditions. Therefore, we must disregard the evidence obtained by the CIR on its own motion and are left with findings not supported by substantial evidence, resulting in the entry of an unjustified order which is therefore arbitrary, capricious, and unreasonable.

The City has assigned other errors which, in view of our holding, we find unnecessary to consider.

The order and judgment of the CIR is reversed and the cause ordered dismissed.

REVERSED AND DISMISSED.

BOSLAUGH, J., concurs in the result.

BRODKEY, J., dissenting.

I must strongly dissent from that portion of the majority opinion which purportedly establishes the rule that: "[T]he CIR cannot, in a section 48-818, R. R. S. 1943, case, obtain evidence on its own motion unless the moving party has first made a prima facie case by satisfying the burden of proof of establishing noncomparability with prevalent conditions." In my opinion there is no justification nor precedent or authority for such a rule; and, in fact, it would appear to fly in the teeth of the statutes themselves.

In the instant case, trial was commenced on June 19, 1978. On June 28, 1978, the Court of Industrial Relations gave written notice to the parties that the court had caused an investigation to be made, pursuant to section 48-817, R. R. S. 1943, as to the wages paid for the various job classifications in the seven cities in the State of Nebraska in the population range of 2,000 to 3,850 which operate their own generating plants; and ordered that such information shall be made part of the record, and that either party shall have 5 days from the date thereof to challenge, contradict, or rebut such information. On July 5, 1978, the Court of Industrial Relations entered a further order giving the parties until July 10, 1978, to rebut, supplement, or otherwise challenge the material contained in the court's "Order and Notice" of June 28, 1978; and on July 12, 1978, ordered that the parties would have until July 21, 1978, to submit final briefs in the matter. The court's "Opinion and Order" is dated July 26, 1978, and was filed on July 27, 1978. In the opinion of this court it is stated: "The City's primary complaint as expressed

in its assignments of error is that the CIR had no authority to conduct its own investigation as to wage comparability after Union had failed to sustain its burden of proof on that issue, and because of such failure, the case should have been dismissed." The majority of the court agrees with that statement and disagrees with the findings made by the Court of Industrial Relations in its opinion to the effect that: "Where the parties have not presented evidence deemed sufficient properly to appraise the value of the particular labor before it, the court may *sua sponte* direct the production of other or different evidence in order that it may properly execute its duty to protect the public interest and reach an accurate conclusion. * * * Executing this duty as empowered by the Legislature under § 48-817, R. R. S. 1943, we have had data produced on the various job classifications in cities in the state operating their own generation plants and within a population range of 2,000 to 3,850 to add to petitioner's proffered comparables." After reciting the rule, with which we wholeheartedly agree, that the function of the CIR is to *settle* industrial disputes, the majority of this court concludes: "The result is that the CIR cannot, in a section 48-818, R. R. S. 1943, case, obtain evidence on its own motion unless the moving party has first made a prima facie case by satisfying the burden of proof of establishing noncomparability with prevalent conditions. Therefore, we must disregard the evidence obtained by the CIR on its own motion and are left with findings not supported by substantial evidence, resulting in the entry of an unjustified order which is therefore arbitrary, capricious, and unreasonable."

It will be helpful at this point to review certain provisions of the Court of Industrial Relations Act, which we believe to be pertinent. Section 48-816, R. R. S. 1943, provides in part as follows: "The court shall have the authority (1) to make studies and analyses of, and act as a clearinghouse of informa-

tion relating to, conditions of employment of public employees throughout the state; (2) to request from any government, and such governments are authorized to provide, such assistance, services and data as will enable the board properly to carry out its functions and powers; (3) to conduct studies of problems involved in representation and negotiation, including, but not limited to, those subjects which are for determination solely by the appropriate legislative body, and make recommendations from time to time for legislation based upon the results of such studies; (4) to make available to employee organizations, governments, mediators, fact-finding boards and joint study committees established by governments and employee organizations statistical data relating to wages, benefits and employment practices in public and private employment applicable to various localities and occupations to assist them to resolve complex issues in negotiations; and (5) to establish, after consulting representatives of employee organizations and administrators of public services, panels of qualified persons broadly representative of the public to be available to serve as mediators or members of fact-finding boards." Lest it be argued that the foregoing statute is general in nature and does not permit investigations to be made for the purpose of providing necessary data to decide a case under consideration, we point out that the following section of the statutes, being section 48-817, provides as follows: *"After the hearing and investigation* the court shall make its findings and enter its order or orders in writing, which decision and order or orders shall be entered of record. Such order or orders shall be in effect from and after the date therein fixed by the court, but no such order or orders shall be retroactive. In the making of any findings or orders in connection with any such industrial dispute, the court shall give no consideration to any evidence or information which it may

obtain or receive, except matters of which the district court might take judicial notice, *unless such evidence or information is made a part of the record in said hearing and opportunity is given, after reasonable notice to all parties to the controversy, to rebut such evidence or information either by cross-examination or testimony.*" (Emphasis supplied.) In the instant case, it is clear that the results of the investigation by the CIR is made part of the record in this case, and opportunity was given to the parties to rebut the evidence or information. The opening lines of the paragraph clearly indicate that the investigation may be made after the hearing, so long as it is done before the court makes its findings and enters its order in the matter. Even if it were to be assumed, which I do not, that the statutes referred to are ambiguous and need interpretation, it is clear from the public policy involved in the act, as specifically stated in the statute, and also by specific statutory direction, that the statutes in question should be liberally construed to effect such public policy. We therefore review some of these provisions.

Section 48-802, R. R. S. 1943, provides: "To make operative the provisions of section 9, Article XV, of the Constitution of Nebraska, the public policy of the State of Nebraska is hereby declared to be as follows: * * * It is contrary to the public policy of the state to permit any substantial impairment or suspension of the operation of governmental service, * * * by reason of industrial disputes therein." Under section 48-803, R. R. S. 1943, it is clear that although called a court, the Court of Industrial Relations is actually an administrative agency, and is referred to as an "industrial commission." Section 48-810, R. R. S. 1943, provides that all industrial disputes involving governmental service shall be "settled" by invoking the jurisdiction of the Court of Industrial Relations. See, also, School Dist. of Seward Educa-

tion Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752 (1972). Section 48-812, R. R. S. 1943, provides: "Except as modified by the Court of Industrial Relations under the provisions of section 48-809 or other provisions of sections 48-801 to 48-823, proceedings before the court shall conform to the code of civil procedure. applicable to the district courts of the state * * *." Pursuant to the above statutes, the Court of Industrial Relations has from time to time modified the general rules of civil procedure of the District Courts of the State of Nebraska and has adopted "Rules of Procedure Before the Nebraska Court of Industrial Relations;" for example, in Rule 4 thereof it has set out the requirements for various types of petitions filed in that court including what must be alleged in a petition in "Proceedings Under Section 48-818" to establish or alter wages, hours, and conditions of work.

Finally, we point out that the intention of the Legislature in adopting the statutes relating to the Court of Industrial Relations is clearly set out in section 48-823, R. R. S. 1943, which reads as follows: "The provisions of sections 48-801 to 48-823 and all grants of power, authority and jurisdiction herein made to the Court of Industrial Relations *shall be liberally construed* to effectuate the public policy enunciated in section 48-802. All incidental powers necessary to carry into effect the provisions of sections 48-801 to 48-823 are hereby granted to and conferred upon the court herein created." (Emphasis supplied.)

The construction given to the statutes referred to by the majority of the court in today's opinion is, in my opinion, anything but a liberal construction of such statutes and will cripple and impede the efficient operation of the Court of Industrial Relations and the beneficent purposes for which it was created. Any needed changes in the act should, in my opinion, be done by the Legislature, and not by this court.

WHITE, J., joins in this dissent.