LINCOLN COUNTY SHERIFF'S EMPLOYEES ASSOCIATION, LOCAL 546, INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, APPELLEE, V. COUNTY OF LINCOLN, NEBRASKA, APPELLANT.

343 N.W.2d 735

Filed January 27, 1984. No. 82-829.

William A. Harding of Nelson & Harding, for appellant.

Ronald Rosenberg of Rosenberg, Gibson & Taute, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The appellant, the County of Lincoln, Nebraska (County), appeals from an order entered by the Nebraska Commission of Industrial Relations (CIR) setting and adjusting wages for certain members of the Lincoln County Sheriff's Employees Association, Local 546, International Brotherhood of Police Officers (Union), employed by the County in its sheriff's office. The County has assigned eight errors allegedly committed by the CIR. Our review of the assignments leads us to the conclusion that they are without merit and that the order of the CIR should be affirmed in all respects.

On May 4, 1982, the Union filed a petition with the CIR, alleging that an industrial dispute existed between the Union and the County regarding wages and benefits for the period July 1, 1981, to and including June 30, 1982. The petition further alleged that the Union and the County had reached an impasse in negotiations and that the jurisdiction of the CIR should be invoked. The County filed an answer and counterclaim on May 10, 1982. The County defended on the basis that the petition failed to state a claim upon which relief could be granted. Further, the County maintained that the CIR was without jurisdiction because the petition failed to allege that the wages, hours, and conditions of employment paid

to the Union members were not comparable to workers exhibiting the same or similar skills under the same or similar working conditions as required by Neb. Rev. Stat. § 48-818 (Reissue 1978). The County's third defense alleged that portions of the Union's petition seeking to adjudicate the rights of the County to implement its final best offer were governed by an earlier decision of the CIR and that such portions of the petition were thus rendered moot. The County counterclaimed, alleging that wages and fringe benefits paid to the County employees were above the prevailing rate and that the petition, therefore, should be dismissed.

A hearing was held before the CIR on July 15 and 16, 1982, at which time the Union presented a seven-county array consisting of both Nebraska and out-of-state counties. Throughout the presentation of the Union's case, the County objected to both the array and the Union's expert testimony, on the basis of hearsay and no proper and sufficient foundation. At the conclusion of the Union's case the County moved to dismiss the petition. When that motion was overruled, the County proceeded to present its own evidence, including two arrays prepared by the County. One array consisted of solely Nebraska counties. A second array consisted of counties within a 200-mile radius and included both Nebraska and out-of-state counties. At the conclusion of the hearing and after taking the matter under submission, the CIR filed its opinion and order on October 15, 1982. The CIR rejected the Union's array and adopted instead a Nebraska array proposed by the County. It further determined and ordered that salaries should be adjusted upward for the period effective July 1, 1982, for corporal, investigator, patrol deputy, sergeant, dispatcher, jailer, and jail supervisor (maximum only). It left unchanged minimum-maximum monthly wages for office deputy, minimum monthly wage for jail supervisor, and ordered that all other conditions of employment should remain unchanged.

The County assigns as its first series of errors the failure of the CIR to sustain its objections to the Union's survey and the failure to grant the County's motion to dismiss. The County's theory apparently is that the Union's array should not have been admitted into evidence, and absent such evidence, the Union failed to make a prima facie case, thereby entitling the County "to win." We may dispose of those assignments for two reasons. In the first instance the CIR specifically determined that it was not accepting the Union's array and was not considering it in its decision, but, instead, was using a Nebraska array proposed by the County. To suggest therefore that the order in some way contains evidence which should not have been considered by the CIR and entitles the County to a reversal is to ignore what in fact happened. The evidence was not considered by the CIR and could not be the basis for a reversal. Furthermore, once the County's objections to the introduction of evidence were overruled and its motion to dismiss overruled, the County elected to proceed to offer evidence rather than to stand on its objections. By doing so it waived any objection or error which may have been committed. A defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion for a directed verdict. *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983); *Baker v. Blue Ridge Ins. Co.*, 215 Neb. 111, 337 N.W.2d 411 (1983); *Schaffer v. Strauss Brothers*, 164 Neb. 773, 83 N.W.2d 543 (1957). For those reasons it is therefore unnecessary for us to further consider the County's first four assignments of error.

In its fifth assignment of error the County maintains that the CIR erred in its selection of the array for comparability purposes. However, the record is clear that the CIR selected a composite of the arrays submitted by the County. We can again dispose of

this assignment for two reasons. In the first instance one may not introduce evidence and then maintain that it was error for the court to consider the evidence introduced by that party. See *Foreman & Clark of Nebraska, Inc. v. City of Omaha*, 203 Neb. 746, 280 N.W.2d 892 (1979). But, more importantly, when one examines the array considered by the CIR, one is unable to find any abuse of discretion on the part of the CIR. Absent a showing that the eight Nebraska counties considered by the CIR did not present a suitable array, we cannot say that the CIR was arbitrary in refusing to consider every other or additional county, wherever located, which also might be comparable. The requirement of the CIR in this regard is not to consider every conceivable comparable but only to consider a sufficient representative array so that the commission can determine whether the wages paid or the benefits conferred are comparable. § 48-818. In its order the CIR specifically found: "Based upon the evidence presented, we determine that an array consisting of the Nebraska counties of Adams, Buffalo, Dawson, Dodge, Hall, Madison, Platte, and Scotts Bluff is an appropriate array for the determination of this matter." This array fully complied with the standards stated by us in *Fraternal Order of Police v. County of Adams*, 205 Neb. 682, 685, 289 N.W.2d 535, 537 (1980), wherein we said: "In selecting employment units in reasonably similar labor markets for the purpose of comparison as to wage rates and other benefits, the question is whether, as a matter of fact, the units selected for comparison are sufficiently similar and have enough like characteristics or qualities to make comparison appropriate." We believe that the CIR was correct in its conclusion that the eight-county array presented by the County was sufficient and that the out-of-state counties excluded were not necessary. We believe that there are strong policies in favor of using an array of comparable Nebraska employers rather than using em-

ployers from outside the State of Nebraska, when an appropriate array for that purpose within the state exists. Certainly, if comparables within the state cannot be found, the 1969 amendment to § 48-818 permits the CIR to look elsewhere; but, when given a choice between sufficient comparables within the state and comparables without the state, we believe it more appropriate for the CIR to confine itself to comparables within the state. We simply cannot say that the CIR acted arbitrarily when it rejected out-of-state counties in the second array submitted by the County and, instead, adopted an array consisting only of Nebraska counties presented to it by the County.

Turning, then, to the County's assignments of error Nos. 6 and 7, which we consider together, we believe, again, they are without merit. The County maintains that the CIR erred in rejecting the use of the County's economic variable deflator evidence contained in the record and in failing to reduce unit wages and fringe benefits because the evidence in the record clearly indicates that the County was above the prevalent wages and benefits.

If we understand the assignment of error, which is not always easy to do by reason of the language which parties to labor negotiations insist on using, we believe that the CIR was not in error. The CIR specifically addressed this issue in its order. It is obvious that the CIR was mindful of the requirement to consider economic variables, if relevant. Specifically, the CIR order noted: "In determining prevalent wage rates for comparable services in reasonably similar labor markets, the Commission of Industrial Relations is required to weigh, compare and adjust for any economic dissimilarities shown to exist which have a bearing on prevalent wage rates. Lincoln Fire Fighters Ass'n v. City of Lincoln, 198 Neb. 174, 180, 252 N.W.2d 607, 611 (1977).

"Where it is alleged that economic dissimilarities exist which have a bearing on prevalent wage rates,

the burden is on the party making that allegation to establish the bearing of any such economic dissimilarities on prevalent wage rates. The burden of proof is satisfied by actual proof of the facts, of which proof is necessary, regardless of which party introduces the evidence. Lincoln Fire Fighters Ass'n v. City of Lincoln, 198 Neb. 174, 178, 252 N.W.2d 607, 610 (1977).'' The CIR then said: "From the evidence presented in this case, we find that [County] has not established that the economic dissimilarities shown to exist have a bearing on prevalent wage rates for the job classes in this dispute and, therefore, no adjustments have been made in the wage figures for economic dissimilarities.'' In failing to consider the economic variables based upon the evidence presented by the County, the CIR specifically found that the County's expert gave examples where counties were high on per capita income but wages paid to some of their sheriff personnel were lower as compared to other counties with even lower per capita income figures. Furthermore, the County's expert admitted that the exhibits presented on the employment distribution did not take into account people working for the government and that the figures presented did not show any direct relationship between wages earned in the public sector and wages earned in the private sector. We cannot say as a matter of law that the action of the CIR in refusing to adjust the wages because of economic variables was arbitrary or capricious. Because the CIR is an administrative agency within the purview of the Administrative Procedures Act, see *Nebraska Dept. of Roads Employees Assn. v. Department of Roads*, 189 Neb. 754, 205 N.W.2d 110 (1973), and because our review of an order of an administrative agency, including the CIR, is generally restricted to considering whether the commission's order is supported by substantial evidence, whether the commission acted within the scope of its statutory authority, and whether its action was arbitrary,

capricious, or unreasonable (*AFSCME Local 2888 v. County of Douglas*, 208 Neb. 511, 304 N.W.2d 368 (1981); *General Drivers and Helpers Union v. City of West Point*, 204 Neb. 238, 281 N.W.2d 772 (1979); *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983)), we are unable to find error in the action taken by the CIR in this regard. Assignments 6 and 7 must likewise be overruled.

The County's final assignment of error is that the CIR erred in failing to properly adjust wages because it refused to take into account that wage figures had been adjusted to reflect a 40-hour workweek. ' We believe, however, that the CIR's order explains that matter and that the action of the CIR in failing to make the adjustment was correct. In its order the CIR specifically found: ''[The County] adjusted all wage figures reported to a 40-hour work week since not all of the array members worked the same work week. The Commission finds the evidence is unclear as to whether the work weeks reflected in the surveys take into account all the hours compensated. . . . Because of this ambiguity the Commission will not adjust the reported wage rates to a 40-hour work week.'' We have likewise reviewed the record, as did the CIR, and we must reach the same conclusion, to wit, that the evidence is ambiguous as to whether the County made the necessary adjustment or whether the CIR should have. The assignment is likewise overruled.

The County has further argued one last matter in its brief. It maintains that the CIR established wage rates based upon an array presented by the County for the last 6 months of the fiscal year, when, in fact, the period in dispute was an entire fiscal year. We may disregard this error, again, for two reasons. In the first instance the County did not assign that as an error but merely sought to argue it in some general detail in its brief. It has long been the rule of this court that we will not consider errors not properly assigned. The rules of this court require

that each error relied upon for reversal must be separately stated in concise language. See, Neb. Ct. R. 9D(1)d (Rev. 1982); *Parkhurst v. Parkhurst*, 184 Neb. 687, 171 N.W.2d 243 (1969). Additionally, however, we have reviewed both the evidence presented by the County and the argument made by counsel with regard to this claim, and, while the Union did present evidence only with respect to the second half of the fiscal year, there is no evidence in the record that the evidence for the first 6 months would be significantly different than the second 6-month period, or that by considering the first 6-month period any significant change would be made. The burden to establish this was upon the County, and the CIR did not act arbitrarily in finding that the County had not established its burden of proof in that regard.

For these reasons we believe that the order of the CIR was in all respects correct and should be affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring.

While I concur completely with the result reached by the majority in this opinion, I believe that this case points up to us the error of our holding in *General Drivers and Helpers Union v. City of West Point*, 204 Neb. 238, 281 N.W.2d 772 (1979), in which I joined with the majority. In *General Drivers* we first held that the burden is on the moving party to demonstrate that existing wages are not comparable to the prevailing wage rate. We then went on to hold that the Commission of Industrial Relations could not obtain evidence on its own motion unless the moving party had first made a prima facie case by satisfying the burden of proof of establishing noncomparability of wages with prevailing conditions, and if the moving party failed to make a prima facie case, the action should be dismissed. On further reflection I now think that we have imposed a rule which is contrary to the entire scheme of the industrial relations law in Nebraska. The purpose of the

law is to insure continuous, uninterrupted, and proper functioning and operation of governmental services. See Neb. Rev. Stat. § 48-802(1) (Reissue 1978). In attempting to do so the Legislature has struck a balance. On the one hand, public employees are prohibited from interrupting the delivery of public services by strike or other means. On the other hand, to protect the economic interests of such public employees, there has been developed a statutory scheme whereby an administrative agency is authorized to resolve public sector employer-employee disputes. To therefore suggest that if the employees fail to make a prima facie case, the government employer in some manner is 'then absolved of its statutory obligation to pay comparable wages is to ignore the entire scheme. The Commission of Industrial Relations is not a court; it is an administrative agency. See *Nebraska Dept. of Roads Employees Assn. v. Department of Roads*, 189 Neb. 754, 205 N.W.2d 110 (1973). As such, it should be authorized and permitted to operate as an administrative agency, authorized to consider all of the evidence, whether brought by the employer or brought by the employee. The purpose of the act is to attempt to adjust labor disputes in the public sector as quickly as possible and not to engage in meaningless legal technicalities. Here, we have an example of employees in 1984 still attempting to adjust wages earned in 1981 because of a belief on the part of the employer that the employee failed to make a "prima facie case." I cannot believe that the purpose of the public sector law, or the public for that matter, is benefited by such procedure; and if the act does not make that as clear as I believe it does, it should be made clear. I would have overruled that portion of *General Drivers and Helpers Union v. City of West Point* which holds that a petition may be dismissed at the close of the employees' case if they have failed to make a prima facie case.

GRANT, J., joins in this concurrence.