STATE OF NEBRASKA, APPELLEE, V. MARK C. THOMAS, APPELLANT.
468 N.W.2d 607

Filed May 3, 1991.   No. 90-143.

Mark C. Thomas, pro se.

Gary L. Hogg, Buffalo County Public Defender, on brief for appellant.

Robert M. Spire, Attorney General, and Alfonza Whitaker for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.
Contending that the evidence was insufficient to identify him as the perpetrator of the crime with which he was charged and that he should have been placed on probation, Mark C. Thomas appeals his jury conviction for attempted burglary and his prison sentence of not less than 1 nor more than 3 years.

The district court for Buffalo County ordered Thomas to serve his attempted burglary sentence consecutively to the sentences imposed for two other convictions. The first of those convictions was for another attempted burglary, and the second was for possession of burglary tools. We affirm.

In this case, the defendant also stood trial on four separate counts of burglary in Kearney, Nebraska, but he was acquitted of those charges, and they need not be discussed further.

A person commits attempted burglary if such person

intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the commission of the crime of burglary. See Neb. Rev. Stat. § 28-201 (Reissue 1989). A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value. Neb. Rev. Stat. § 28-507 (Reissue 1989).

In this court, Thomas appeared pro se at oral argument. His brief, however, was prepared by the Buffalo County public defender's office and sets forth three assignments of error. Those assignments claim that the trial court erred (1) in failing to sustain defendant's motion for a directed verdict at the end of plaintiff's case and again at the end of the trial; (2) in sentencing, given the evidence and factual situation of the case; and (3) in allowing the prosecuting attorney to make reference to evidence which was clearly not involved in any one of the five counts on which the defendant was charged, thus prejudicing the jury as to the defendant.

Thomas first claims that the district court for Buffalo County should have sustained his two motions for directed verdict. We confine our review to Thomas' motion for a directed verdict at the conclusion of all of the evidence because any error in the ruling on his first motion for a directed verdict, at the conclusion of the State's evidence, was waived. See *Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln*, 216 Neb. 274, 343 N.W.2d 735 (1984) (a defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion for a directed verdict). In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Valdez*, 236 Neb. 627, 463 N.W.2d 326 (1990); *State v. Bradley*, 236 Neb. 371, 461 N.W.2d 524 (1990). In the consideration of a defendant's motion for a directed

verdict, the State is entitled to have all its relevant evidence accepted or treated as true, every controverted fact favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence. See *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

The record reveals that in the early morning hours of May 12, 1989, John Schmidt, a police officer with the city of Kearney, was working a special detail entailing plainclothes foot patrol in the city. The purpose of the detail was to provide burglary patrol and building checks. Around 2 a.m., Schmidt was near an alley at the south end of a building housing Adventure Travel Service (ATS). To the east of this building was another building housing General Adjustment Bureau Services (GAB). A 5-foot-wide concrete walkway separated the two buildings.

While Schmidt was at the south end of the ATS building, he heard a high-pitched screeching noise that sounded like the cutting of glass. The officer moved into an inset area behind the building and, after hearing the sound two more times and the additional sound of someone shuffling around in the walkway, rounded the corner of the building and stood in the south entrance of the walkway. At that point, Schmidt observed Thomas facing the GAB building. Thomas was fumbling with a vent or wiring under a window. Schmidt, from 20 feet away, shined his flashlight on Thomas, who turned and faced Schmidt. Thomas was wearing dark pants with a double white stripe down the side, a dark top, and a black "ninja style" mask. Schmidt could see the eyes, nose, and upper cheekbone area of Thomas' face. The officer testified that he recognized and identified the subject. Schmidt observed Thomas from the front for 20 to 30 seconds.

Schmidt identified himself as a police officer and instructed Thomas to face a wall and to put his hands on it. He further demanded to know what Thomas was doing, and Thomas responded, "[S]ecurity." As Schmidt talked, Thomas began slowly walking backward. After making the comment "security," Thomas turned and ran from the north end of the walkway. Schmidt gave chase for two blocks, but lost him.

Schmidt's investigation upon his return to the crime scene

revealed that there was a residence located directly south of the building and across the alley. A bicycle, described as a "silver or gray Schwinn ten-speed," was discovered on the patio within the fenced backyard. The bicycle did not belong to the owner of the residence. In studying the crime scene, Schmidt found that there were scratch marks on the window above where he first saw Thomas standing and that a vent directly below the window had been bent upward.

Sometime between 5:30 and 6 a.m., Schmidt and other officers proceeded to Thomas' residence to execute an arrest warrant. The defendant's house was 14 to 15 blocks from the building housing GAB. Roma Thomas, the defendant's mother, answered the door and went to summon the defendant. The officers, shortly thereafter, followed her downstairs and placed Thomas under arrest. According to Schmidt, Thomas was fairly alert for someone who had just awakened. At 8:26 a.m., Roma Thomas telephoned a police investigator and thereafter reported that a bicycle, matching the description of the bicycle found at the residence near the crime scene, had been stolen from Thomas' residence. A warrant to search Thomas' home was executed later that afternoon. None of the clothing Schmidt said Thomas was wearing at the time of the attempted burglary was found.

Thomas does not challenge the evidence relating to any element of the crime with which he was charged other than the identification of himself as the perpetrator. In essence, he argues that there was a complete failure of evidence to identify him as the perpetrator of the crime or that it is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. We disagree. Officer Schmidt testified on direct examination that he recognized and identified the perpetrator as Thomas. On cross-examination, when questioned whether he could make a positive identification, Schmidt responded, "Yes. I was sure who it was." As stated, every controverted fact is resolved in favor of the State. The credibility of a witness and the weight to be given to that witness' testimony are issues for the jury to resolve. See, *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991); *Maloney v. Kaminski*, 220 Neb. 55, 368 N.W.2d 447 (1985). It is

inherent in the jury's verdict in this case that the jury believed Schmidt's testimony identifying Thomas and that the defendant was proved beyond a reasonable doubt to be the perpetrator of the attempted burglary with which the defendant was charged.

Other evidence adduced at trial placing Thomas at the crime scene was the bicycle found nearby. After Thomas was arrested, his mother reported that a bicycle was stolen. The description of the bicycle matched the one found at the residence near GAB. It was found on a patio within a fenced backyard of a residence across the alley from GAB. The residence was owned by a 75-year-old woman, who testified she had never before seen the bicycle.

From the aforementioned evidence, it cannot be said that as a matter of law such evidence is so doubtful in character, lacking probative value, that it cannot sustain a finding that Thomas was the perpetrator of the crime with which he was charged. The evidence was sufficient to present a question of fact, and as such, it was properly submitted to the jury. Thomas' first assignment of error is without merit.

In his second assignment of error, Thomas asserts that the district court abused its discretion in imposing a prison sentence instead of placing him on probation and by not according proper weight to his background and the weight of the evidence on which he was convicted. Denial of probation and imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Dean*, 237 Neb. 65, 464 N.W.2d 782 (1991). See *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990) (whether sentence imposed is probation or incarceration is a matter within the discretion of the trial court). Attempted burglary is a Class IV felony carrying no minimum penalty and a maximum of 5 years' imprisonment, a $10,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1985) and §§ 28-201 and 28-507. Since Thomas' sentence of 1 to 3 years' imprisonment was within the statutory limits, any error must turn on whether the trial court abused its discretion.

An abuse of discretion occurs when the reasons or rulings of the trial court are clearly untenable and deny a just result to the defendant. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253

(1990). Statutory guidelines in granting probation are found in Neb. Rev. Stat. § 29-2260(2) (Reissue 1989), which provides:

> Whenever a court considers sentence for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court *may* withhold sentence of imprisonment *unless*, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because:
>
> (a) The risk is substantial that during the period of probation the offender will engage in additional criminal conduct;
>
> (b) The offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or
>
> (c) A lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

(Emphasis supplied.)

Inherent in the trial court's colloquy with Thomas during sentencing is the conclusion that all three of the above elements were found to be present. The crime for which Thomas was convicted was committed while the defendant was out on bond for a prior offense. Further, the trial court recognized that Thomas had been granted probation by a federal court and that that probation was revoked.

The presentence report contained an evaluation of Thomas from a federal hospital facility. The staff summary recommending incarceration stated that Thomas could benefit from a prolonged structured period of supervision and that incarceration would not likely have an adverse effect on his emotional stability. See *State v. Clear*, 236 Neb. 648, 463 N.W.2d 581 (1990) (a sentencing judge may consider relevant information contained in a presentence report on the defendant to determine an appropriate sentence within the statutorily authorized penalty, punishment, or disposition applicable to the crime for which the defendant has been convicted).

Finally, there is no question that Thomas' criminal record

shows a longstanding disregard for the rights of others. In his short life, Thomas has amassed a record containing six felonies. Clearly, to reward Thomas with probation would exacerbate his disrespect for the law.

The trial court gave regard to the nature and circumstances of the crime. Reviewing the history, character, and condition of Thomas, the court found that the defendant continued to blame others for his predicament and refused to accept responsibility. Having properly used the statutory guidelines denying probation, the trial court did not abuse its discretion. The second assignment of error is therefore without merit.

This court need not address the merits of the third assignment of error, for it was not discussed in Thomas' brief. Errors assigned but not discussed in an appellant's brief are not considered by the Supreme Court. *Horst v. Johnson*, 237 Neb. 155, 465 N.W.2d 461 (1991); *State v. Two IGT Video Poker Games*, 237 Neb. 145, 465 N.W.2d 453 (1991); Neb. Ct. R. of Prac. 9D(1)d (rev. 1989). The same is true of issues raised at oral argument by Thomas pro se, but not assigned as error or discussed in his brief. To be considered by the Supreme Court, error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *Federal Land Bank of Omaha v. Victor*, 232 Neb. 351, 440 N.W.2d 667 (1989). The judgment of the district court is affirmed.

AFFIRMED.