CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT, V.
OMAHA POLICE UNION LOCAL 101, APPELLEE.

382 N.W.2d 613

Filed March 7, 1986.   No. 84-643.

Herbert M. Fitle, Omaha City Attorney, and Kent N. Whinnery, for appellant.

Bruce G. Mason of Ross & Mason, P.C., for appellee.

Krivosha, C.J., Boslaugh, Hastings, Caporale, Shanahan, and Grant, JJ., and Colwell, D.J., Retired.

Colwell, D.J., Retired.

This appeal follows a decision of the Commission of Industrial Relations (CIR) denying the petition of the City of Omaha to remove the rank of police captain from the bargaining unit represented by the Omaha Police Union Local 101.

Central to the appeal is a brief review of Neb. Rev. Stat. § 48-816 (Reissue 1984). It was amended in 1969 to authorize public employers to recognize employee organizations, to negotiate collectively, and to enter into written agreements with them. In *City of Grand Island v. American Federation of S. C. & M. Employees,* 186 Neb. 711, 185 N.W.2d 860 (1971), this court set aside the CIR's determination that the captains and lieutenants of the Grand Island fire division should be included in the same bargaining unit as the rest of the firefighters. The rationale behind the decision was that the captains' and lieutenants' duties were *supervisory* in nature, thus different from the duties of the firefighters.

In 1972 the Legislature responded to that decision with this amendment to § 48-816 (Cum. Supp. 1972):

> All firemen and policemen employed in the fire department or police department of any municipal corporation in a position or classification subordinate to the chief of the department and his immediate assistant or assistants holding authority subordinate only to the chief, *shall be presumed to have a community of interest* and may be included in a single negotiating unit represented by an employee organization for the purposes of this act. Public employers *shall* be required to recognize an employee's negotiating unit composed of firemen and policemen holding positions or classifications *subordinate to the chief of the fire department or police department* and his immediate assistant or assistants holding authority subordinate only to the chief when such negotiating unit is designated or elected by employees in the unit.

(Emphasis supplied.)

The constitutionality of the amendment was approved in *Local Union No. 647 v. City of Grand Island*, 196 Neb. 693, 244 N.W.2d 515 (1976), holding that because of the different and unusual duty circumstances of firefighters and police officers, it was lawful to classify them differently from other public employees.

The dispute here arose when defendant refused to remove police captains from its membership after all captains had made such a request. Plaintiff contended that this was in violation of an agreement with defendant. Defendant denied such an agreement and further contends that removal of police captains was not a recognized proposal for their ongoing contract negotiations.

The review of a decision of the CIR is restricted to considering whether the decision is supported by substantial evidence, whether the CIR acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977); *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984). It is not for the Supreme Court to resolve conflicts in the evidence. Credibility of witnesses and the weight to be given to their testimony are for the administrative agency as the trier of fact. *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983).

In denying the petition the CIR found that, although there had been some change in the duties of the captains, the job descriptions and functions had remained essentially the same, and the evidence was insufficient to rebut the legislative policy mandating the inclusion of the captains in the unit.

Appellant claims three errors: (1) The CIR erred in finding that the evidence failed to establish that there was an agreement between the city and the union to the effect that if all captains requested withdrawal from the bargaining unit, the union would allow them to do so; (2) The CIR erred in finding that the police captains had been subjected to pressure to withdraw from the bargaining unit; and (3) The CIR erred in finding that the evidence presented was not sufficient to overcome the

statutory presumption of the existence of a community of interest between the police captains and all subordinate officers.

In April of 1983 the Omaha chief of police issued an order assigning personal parking stalls to police captains in the police parking garage. In September 1983 a similar order was issued concerning police lieutenants. Defendant objected to both orders. In August 1983 eight of the nine police captains requested a meeting with the city and the union to discuss their removal from the union. At the meeting on September 23, 1983, the subject of removal was discussed, but no formal agreement was reached. The city claims that there was an agreement, described as a consensus, that if all police captains agreed to be removed, the union would remove them. The union denies an agreement. Negotiations between the parties for their 1984 contract began at a meeting held on October 18, 1983, where it was agreed that at the next meeting both sides would present their proposals for negotiation and that thereafter no new proposals would be considered.

The next meeting was held on November 7, 1983. No proposals were presented by either party concerning the withdrawal of the captains, and the minutes do not show any discussion on the subject. On December 23, 1983, the city requested the union to remove the captains. On December 28, 1983, the captains, in writing, requested information from the city on whether unanimous consent was required, whether they would have a voice in the removal, if January 1, 1984, was a deadline, and whether a letter to the union signed by all captains would be sufficient. On December 30, 1983, all of the captains, by letter, requested their removal from the union. On January 6, 1984, the matter came to a head when the union refused removal. The city claimed an agreement with the union for removal of captains if all captains agreed; the union countered that there was no such agreement and, further, that it was a procedural matter, being a proposal outside of those items presented for negotiation at their November 7, 1983, meeting. The city then filed its petition with the CIR.

Concerning the first assigned error, both parties agree that there was no written agreement, memorandum, or information

supporting the city's claim. Some witnesses attending the September 23 meeting testified that it was their understanding that there was an agreement, although no specific contractual details were given. The city describes this understanding as a consensus that an agreement existed. At this meeting the representatives of both the city and the union were not in continuous attendance. Until December 30 the removal intentions of all captains were tentative and conditional. Although the parties continued to discuss the captains' removal after September 23, the city made no effort to secure from the union a firm commitment to the removal terms; the city's explanation that a formal agreement was unnecessary, since the parties had already mutually agreed, is not supported in the evidence. The silent minutes of the November 7 meeting support the union's claim of no agreement. There was substantial evidence supporting the CIR's finding of no agreement.

The second error relates to two areas. (1) A tentative plan suggested by the chief of police that captains and lieutenants be assigned police cars on a 24-hour loan basis to decrease response time, increase availability, and improve community relations. The plan was known to the police staff; however, it was never implemented. (2) The April 1983 assignment of parking stalls in the police garage to captains for their personal cars. The chief explained that this was a privilege that enhanced captains' leadership and ability to discharge discipline duties. This evidence supports the CIR's finding.

Appellant's final claimed error is an attempt to use *Local Union No. 647 v. City of Grand Island*, 196 Neb. 693, 244 N.W.2d 515 (1976), as authority establishing guidelines for rebutting the statutory presumption of a community of interest, § 48-816(3) (Cum. Supp. 1982), particularly referring to this language:

They are primarily responsible for the protection of life and property. They are on a perpetual emergency basis. Their memberships are closely knit and in working together their lives are often dependent on fellow members. A close kinship between the members and their officers develops. This closeness and a recognition of the

elements mentioned promotes efficiency and a willingness to work together.

196 Neb. at 695, 244 N.W.2d at 517.

We disagree. First, that language related only to the special duty circumstances of firefighters and police officers as a basis authorizing constitutional classification of public employees, which was the only issue in that case. That is not to say that evidence in those areas would not be relevant to the issue of a presumption of community interest. Second, that argument is a return to the "supervisor" argument in *City of Grand Island v. American Federation of S. C. & M. Employees*, 186 Neb. 711, 185 N.W.2d 860 (1971), which was later removed by the 1972 amendment, now § 48-816(3), with the blessing of a presumption of a community of interest.

Appellant's evidence emphasizes the supervisory character of the captains' duties, amounting to a reworking of the *City of Grand Island v. American Federation of S. C. & M. Employees, supra*, ground, and contrary to the 1972 amendment. The CIR properly found that there was little change in the police department organization plan and the duties of a captain and that the appellant failed to overcome the presumption of a community of interest.

From a full review of the record, the decision of the CIR was supported by substantial evidence, and it was not arbitrary, capricious, or unreasonable.

AFFIRMED.

KRIVOSHA, C.J., participating on briefs.