DOUGLAS COUNTY HEALTH DEPARTMENT EMPLOYEES ASSOCIATION, APPELLANT AND CROSS-APPELLEE, V. COUNTY OF DOUGLAS, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT.

427 N.W.2d 28

Filed July 29, 1988.   No. 86-748.

302

Thomas J. Young, of Young, LaPuzza & Stoehr, for appellant.

William A. Harding and Jerry L. Pigsley, of Nelson & Harding, and Ronald L. Staskiewicz, Douglas County Attorney, and H.L. Wendt for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

HASTINGS, C.J.

This action was filed by the plaintiff-appellant, Douglas County Health Department Employees Association (Association), against the defendant-appellee, County of Douglas (County), in the Nebraska Commission of Industrial Relations (CIR). The Association prayed that the CIR settle an industrial dispute as to wages, hours, fringe benefits, and conditions of employment for the contract year July 1, 1985, through June 30, 1986. After a hearing, a findings and order some 60 pages in length was issued by the CIR, establishing certain wages and benefits. The Association appeals to this court, assigning 14 errors, summarized as follows: The CIR erred in (1) its determination of employers to be included in its arrays; (2) constructing a national array and a local array; (3) prorating wages of employers in the array to reflect differing contract periods and utilizing certain wage data; (4) not instituting a wage-step progression schedule; (5) ordering certain wage decreases; (6) not determining that the County's failure to grant a 5-percent wage increase was improper; and (7) not determining that the County improperly eliminated and consolidated certain job classifications.

The County cross-appeals, assigning error in 10 respects, summarized as follows: The CIR erred in (1) failing to grant the County's motion to dismiss for insufficient service of process; (2) allowing the Association to submit written interrogatories after the date of the filing of the petition; (3) sustaining the Association's objection to the County's counterclaim; (4) failing to grant the County's motion to limit evidence; (5) failing to consider economic factors in selecting an "out-state" array; (6) failing to decrease certain wages at the start of the contract

year in dispute; and (7) failing to compare certain local employers.

In reviewing a decision of the CIR, this court will consider whether the decision is supported by substantial evidence, whether the CIR acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. *IBEW Local 244 v. Lincoln Elec. Sys.*, 222 Neb. 550, 385 N.W.2d 433 (1986). It is not for the Supreme Court to resolve conflicts in the evidence. Credibility of witnesses and the weight to be given their testimony are for the administrative agency as the trier of fact. *Id.*; *City of Omaha v. Omaha Police Union Local 101*, 222 Neb. 197, 382 N.W.2d 613 (1986).

With regard to the specific assignments of error at hand, we have held that determinations made by the CIR in accepting or rejecting claimed comparables are within the field of expertise of the CIR and should be given due deference. *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984).

In reference to the County's objection to the CIR's ruling on certain evidence, the standard is that, generally, the reception of evidence is within the broad discretion of the trial court. *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987).

On July 1, 1984, the Association became a department of the County and was no longer a joint city/county operation. A 1984-85 collective bargaining agreement had been reached. The County reassigned certain job classifications—consolidating and eliminating classifications such as Environmental Health Scientist III and Laboratory Scientist III. Involved in this dispute are a total of 23 job classifications.

The 71 bargaining unit employees of the Association involved in this action are divided into two categories: professional/paraprofessional and clerical/support personnel. An impasse had been reached for the contract wage and fringe benefits for the year July 1, 1985, through June 30, 1986. On October 16, 1985, the Association petitioned the CIR to settle the industrial dispute, listing the disputed items as hours of work, seniority, layoffs and recalls, sick leave, vacation leave, holidays, insurance, travel expenses, overtime, promotions, wages, and classifications within the bargaining unit. The petition sets forth three causes of action, but only the first cause

of action is involved in this appeal.

On October 21, 1985, the County filed a motion to dismiss for insufficient service of process. The petition and notice of pendency were served upon Richard Schoettger, the administrative assistant to the Douglas County Board of Commissioners. The County claimed that this was improper under Neb. Rev. Stat. § 25-510.02(2) (Reissue 1985) and denied the CIR jurisdiction. On October 23, 1985, the Association then served process upon the Douglas County clerk in compliance with § 25-510.02(2).

Upon a hearing by telephone conference call, the CIR overruled the County's motion to dismiss, finding that it obtained jurisdiction when the Association filed its petition.

Another trial agency ruling involved the service of interrogatories upon the County with the supplemental service upon the clerk. The interrogatories did not accompany the originally served petition, but were served on October 23, 1985, with a supplemental notice of pendency. The County's oral objection was overruled.

The County filed a counterclaim on February 4, 1986, urging the CIR to reduce wages, fringe benefits, and total compensation of certain workers to correspond to prevalent comparability levels. The Association objected to the counterclaim, as it was not filed within the rules prescribed by the CIR. The objection was sustained.

On February 21, 1986, the County filed a motion to limit evidence. The motion was overruled at the time of trial. A hearing was held before the CIR on February 24, 25, and 26, 1986. Evidence before the CIR included expert testimony from both parties regarding the criteria to be utilized in selecting comparable employers for inclusion in an array to determine the prevalent wage rates paid and conditions of employment for establishing wages and fringe benefits for the Association. Testifying for the Association was expert Dr. Robert L. Otteman and for the County were experts Dr. Jerome F. Sherman and Thomas A. Haller.

The Association introduced one survey for consideration by the CIR, combining several local and national employers. The County introduced three separate, prospective arrays: national

employers, local employers, and a third survey which contained only County departments.

Dr. Otteman testified that he selected comparables using a gross screening process and then a finer screening process. He selected health departments based upon their being in the north central census region and qualifying under four characteristics within certain limitations (not less than one-half the size of Douglas County nor more than twice the size of Douglas County). The north central census region includes the States of North and South Dakota, Nebraska, Kansas, Iowa, Minnesota, Wisconsin, Illinois, Indiana, Michigan, and Ohio. The four characteristics were standard metropolitan statistical area (SMSA), organization size, labor market area, and metropolitan area within the SMSA. Health departments generally within these guidelines were selected for inclusion in the Association's array based upon organization size, department size, population of the area served, hours worked, and the number of comparable jobs surveyed and matched.

Dr. Sherman testified for the County that the factors of paramount importance are geographic proximity, percentage of state unionization, percentage of county manufacturing, and population of the SMSA.

Dr. Otteman further conducted interviews with department heads, supervisors, and representatives of personnel departments to determine specific job content, the degree of comparability with the Douglas County Health Department, fringe benefits, and related working conditions. He reviewed the existing contracts, job descriptions, fringe benefit booklets, and related documents to determine the level of job match, prevalent wage rates, and other conditions of employment. These materials are in evidence.

The CIR issued a 60-page findings and order in which it composed two separate arrays. The first array consisted of nonlocal health departments. The second array was termed a local array. The local array was utilized by the CIR for clerical (secretarial) and custodial job classifications.

The order established wages and benefits, increasing some wages effective July 1, 1985, and decreasing some wages effective July 10, 1986. The CIR refused to review the County's

reassignment of individuals within certain job classes, stating:

> The Commission will not enter the realm of management prerogative and review the reassignment of individuals within certain job classifications. However, where evidence conclusively shows that salary anomalies exist as a result of extenuating circumstances, in this case the consolidation of the Department, the Commission will take this into consideration when adjusting current wages to the prevalent rate, if necessary.

The CIR also found two characteristics propounded by the County to be inappropriate. These aspects were percentage of state unionization and percentage of county manufacturing. The CIR found that the County had not established that economic dissimilarities had a direct bearing on the wage rates.

Our analysis begins with Neb. Rev. Stat. § 48-818 (Reissue 1984), which provides in relevant part:

> The findings and order or orders may establish or alter the scale of wages, hours of labor, or conditions of employment, or any one or more of the same. In making such findings and order or orders, the Commission of Industrial Relations shall establish rates of pay and conditions of employment which are comparable to the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions. In establishing wage rates the commission shall take into consideration the overall compensation presently received by the employees, having regard not only to wages for time actually worked but also to wages for time not worked, including vacations, holidays, and other excused time, and all benefits received, including insurance and pensions, and the continuity and stability of employment enjoyed by the employees.

There is no dispute that the CIR was acting within its authority in composing arrays and adjusting wages and benefits accordingly.

The manner in which the CIR is to determine what is comparable to the prevailing wage rate is left to a large extent to

the discretion of the CIR. *AFSCME Local 2088 v. County of Douglas*, 208 Neb. 511, 304 N.W.2d 368 (1981). It is the selection of comparables which is the most critical part of the process performed by the CIR, as the task of the CIR is to determine prevalent wage rates paid and conditions of employment. Once these are established, they are compared with those of the employer before the CIR, and then wage rates and fringe benefits are adjusted accordingly.

The law is clear that the burden is on the moving party in a § 48-818 case to demonstrate that existing wages are not comparable to the prevalent wage rate. *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984). It is necessary for the Association to establish by evidence what were the prevalent wage rates paid and conditions of employment maintained for the same or similar work of workers exhibiting like or similar skills under the same or similar working conditions.

> "In selecting employment units in reasonably similar labor markets for the purpose of comparison as to wage rates and other benefits, the question is whether, as a matter of fact, the units selected for comparison are sufficiently similar and have enough like characteristics or qualities to make comparison appropriate."

*Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln*, 216 Neb. 274, 278, 343 N.W.2d 735, 739 (1984). The CIR need not consider every conceivable comparable, but only has to consider a sufficient number in a representative array so that it can determine whether the wages paid or the benefits conferred are comparable.

As a general rule it may be said that factors most often used to determine comparability are geographic proximity, population, job descriptions, job skills, and job conditions. *AFSCME Local 2088, supra.*

Due to the apparent fact that the employees fall into two separate categories of professional and clerical, the CIR composed a national and a local array. The local array was developed for custodial and clerical/secretarial employees and the nonlocal array for professional and paraprofessional employees. This is consistent with past practice and in keeping

with reality, since an employer competes locally for hourly and clerical workers, but nationally as well for professionals. See *AFSCME Local 2088, supra.*

Composing the nonlocal array were Lincoln/Lancaster County; Des Moines, Iowa (Polk County); Wichita, Kansas; Madison, Wisconsin; Peoria, Illinois; Oklahoma City, Oklahoma; State of Nebraska; Milwaukee, Wisconsin; and Colorado Springs, Colorado (El Paso County). Douglas County was not included.

From the arrays of both parties, there were three common employers: Lincoln/Lancaster County; Des Moines, Iowa; and Wichita, Kansas. These common employers composed the array created by the CIR along with three employers set forth by the Association—Madison, Wisconsin; State of Nebraska; and Milwaukee, Wisconsin—and three employers set forth by the County—Peoria, Illinois; Oklahoma City, Oklahoma; and Colorado Springs, Colorado.

In its first series of errors, the Association challenges the CIR's selection of proposed comparables. The Association presented statistics on Lincoln/Lancaster County, Des Moines, Iowa, and the State of Nebraska in its array to allow them to be selected as comparables. Yet, in its brief, the Association questions them as appropriate comparables. The burden is on the moving party to demonstrate that existing wage rates, hours of labor, and conditions of employment are not comparable to the prevalent wage rates, hours of labor, and conditions of employment. The burden of proof is satisfied by actual proof of the facts, of which proof is necessary, regardless of which party introduces the evidence. *Lincoln Fire Fighters Assn. v. City of Lincoln*, 198 Neb. 174, 252 N.W.2d 607 (1977). The Association is not now in a position to complain.

Wichita, Kansas, was also chosen as a common employer. Three other locales offered by the Association which were chosen are Madison and Milwaukee, Wisconsin, and the State of Nebraska.

The proposed comparable of Madison is located in Dane County, one of the County's proposed comparables. The County's proposed comparable is the county health department, while the Association's proposed comparable, the

one selected by the CIR, is a city health department. Madison is within acceptable criteria on almost all of the characteristics before the CIR; it was properly included within the CIR's array.

Considering the high number of job matches and the conformity with the great majority of the characteristics before the CIR, it was also appropriate for the CIR to include Milwaukee within its nonlocal array.

The County's evidence consisted of comparisons with employees in Peoria, Illinois; Oklahoma City, Oklahoma; and Colorado Springs, Colorado.

The Peoria County Health Department is within the north central census region and is within limits with regard to organizational size (1,200 to 1,900). Departmental size is very close (106 to 90), and the SMSA is within one-half (355,900 to 607,400). It is reasonably close to the County (325 miles), and the employees work the same number of hours (2,080). This sector does not serve the core city of Peoria and in that regard is dissimilar to the County. The number of job matches is 7 of the 13 possible that the County compared.

The Oklahoma City Health Department was a joint city/county operation and is within guidelines with regard to organizational size (2,000 to 1,900) and with regard to departmental size (151 to 90). The SMSA is within acceptable limits (962,600 to 607,400). The population served is the same as the SMSA, and the Oklahoma City/County Health Department does serve the core city of Oklahoma City. This health department is within reasonable geographic proximity (400 miles), and the hours worked are identical (2,080). The inclusion of the Oklahoma City/County Health Department in the CIR array is rational.

The organizational size of Colorado Springs is within limits (1,100 to 1,900), and the departmental size is acceptable (120 to 90). The SMSA is acceptable (349,100 to 607,400); it is only 475 miles from Douglas County; and the hours worked are identical.

Colorado Springs is not within the north central census region, and the actual population served is unknown, as is the question of whether or not this health department serves the core city of Colorado Springs. The number of matching jobs is

7 out of 13.

Considering the fact that the actual population served is unknown, the Association submits that this health department should not have been included within the CIR array for comparison purposes. We disagree. The CIR accurately determined that Colorado Springs was an acceptable comparable.

The CIR chose entities west and south as well as east of the County. Thus, some were not necessarily located in the north central census region.

We are bound by the fundamental:

> Of necessity, attempting to arrive at comparables requires granting some discretion to the CIR; and unless there is no substantial evidence upon which the CIR could have concluded that the counties used by the CIR did, indeed, provide comparables, we may not as a matter of law disallow the action taken by the CIR.

*AFSCME Local 2088 v. County of Douglas*, 208 Neb. 511, 518, 304 N.W.2d 368, 373 (1981). See, also, *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984).

With regard to the second array, the County argues that the CIR erred in failing to include in its array the two local employers of Immanuel hospital and HNG Internorth. The County quotes at length from the case of *AFSCME Local 2088 v. County of Douglas, supra*, where we reversed an order of the CIR for rejecting Omaha-based employers in comparing employees to Douglas County Social Service employees. We stated at 208 Neb. at 520, 304 N.W.2d at 374:

> Whenever there is another employer in the same market hiring employees to perform same or similar skills, the salaries paid to those employees must be considered by the CIR *unless* evidence establishes that there are substantial differences which cause the work or conditions of employment to be dissimilar. Having failed to consider the salaries paid by the other Omaha-based facilities, the order of the CIR in this matter must be reversed.

(Emphasis supplied.)

The local array chosen consisted of: Omaha Public Power District; city of Omaha; State of Nebraska; Bishop Clarkson

hospital; University of Nebraska Medical Center; Creighton University; St. Joseph Hospital; Metropolitan Utilities District; and Lincoln/Lancaster County Health Department (city of Lincoln). The CIR was correct in formulating a local array for clerical/secretarial and custodial personnel, as "there are strong policies in favor of using an array of comparable Nebraska employers rather than using employers from outside the State of Nebraska, when an appropriate array for that purpose within the state exists." *Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln*, 216 Neb. 274, 278-79, 343 N.W.2d 735, 739 (1984).

The three common survey points of the parties were the Omaha Public Power District, the city of Omaha, and the city of Lincoln. The Association is especially critical of the inclusion of St. Joseph Hospital in the array.

St. Joseph Hospital had three of four job matches. The employee size was 2,822 compared to 1,900 for the County. The number of hours worked was the same, 2,080 hours. The CIR's decision to include St. Joseph Hospital was supported by the evidence.

In response to the County's assignment of error regarding exclusion of Immanuel hospital and HNG Internorth, it is observed that both employers had only one of four job matches. Further, HNG Internorth's employee size was 1,373, the lowest of the proposed comparables; thus, they were not hiring employees to perform the same or similar skills. The CIR did not act arbitrarily or capriciously in attempting to arrive at comparable wages. Its decision is given due deference.

The County advances the argument that the CIR erred in "establishing a new comparability standard based on job matches." In its order, the CIR ruled:

> The more data available on the key classes surveyed, (job matches) the greater the indication of similarity of operation between the Respondent employer and the surveyed employer. *IBEW v. O.P.P.D.* at 559. Consequently, an employer offering only 2 or 3 job matches out of a potential 23 will not be considered as comparable as an employer with a larger number of job matches, *all other factors being equal*.

(Emphasis supplied.)

While it is true that the essence of the statutory test established by § 48-818 is one of work comparability, not employer comparability, the CIR has not, by its ruling, unfairly excluded employers with low numbers of job matches. The County has overlooked the last key clause emphasized above, "all other factors being equal." For practicality purposes, the CIR is entitled to work the above guideline into its structure of work comparability.

Another assignment of error on cross-appeal challenges the CIR's exclusion of the County's proposed array No. 1. This array proposed the organizations of Douglas County Hospital, Douglas County courthouse, and Douglas County civil service for comparison. The array examined 6 clerical/custodial positions and 19 fringe benefits or other conditions of employment. The CIR offered no explanation or justification for its exclusion of this array. Although a comparison of other employees of the same employer is clearly authorized, the essence of the test is work comparability, not employer comparability.

It is most difficult to second-guess the CIR's motive in arriving at a manageable array. The local array chosen was certainly adequate. We affirm the CIR's decision, as it does not have to compare every possible employer, and its decision should be given due deference.

The CIR did not order that the County incorporate a longevity plan into its present pay structure. The Association's expert, Dr. Otteman, testified in favor of such a plan, as the County does not currently have such a plan. The CIR's failure to institute a plan, based upon data of the Lincoln/Lancaster County Health Department, is assigned as the Association's third series of errors.

Clearly, the majority of compared counties and businesses did not have longevity pay plans. The County was thus comparable with the prevalent in this regard.

In its fourth assignment of error, the Association insists that the CIR erred in finding that the County had an established wage-step progression schedule and in failing to institute one. The CIR was correct in finding that the current progression

process at the County is comparable in length to the prevalent.

We have stated that the manner in which an individual moves from the minimum to the maximum salary rate of a job classification is a timing difference in the salary schedule, which must be adjusted to reach a comparability determination. *IBEW Local 1536 v. City of Fremont*, 216 Neb. 357, 345 N.W.2d 291 (1984). This condition of employment is another way of defining experience in employment.

The Association contends that the testimony of Haller, John Taylor, and Dr. Otteman reflects that there are no salary steps for health department employees. The exhibits entitled "Salary Range Progression" list the timeframe between wage steps as "Not defined."

The CIR has set a minimum and maximum salary to be paid without providing a basis upon which employees can move within that range. A wage-step progression schedule is a condition of employment which the CIR has been given statutory authority to establish. See, also, *Plattsmouth Pol. Dept. Coll. Barg. Comm. v. City of Plattsmouth*, 205 Neb. 567, 288 N.W.2d 729 (1980).

Although the evidence is not entirely clear, it appears as though the County has some sort of step schedule to which it adheres, for purposes of vacation leave for example. Haller did receive a pay scale from the department for his review. The County apparently utilizes the civil service system of classification, moving from the minimum to the maximum position of pay within approximately 10 years.

The Association is also critical of the manner in which the CIR arrived at a fringe benefit determination toward its overall compensation award. In this area, the CIR is to consider vacations, holidays, other excused time, and all benefits received, including insurance and pensions. § 48-818. The Association focuses on the alleged deficient pension contributions made by the County and the inclusion of local employers, especially St. Joseph Hospital, in the tables compiled by the CIR.

In its measurement, the CIR is required to offset possible unfavorable comparison between employers with other comparisons which are favorable when reaching its decision establishing wage rates. *Crete Education Assn. v. School Dist.*

*of Crete*, 193 Neb. 245, 226 N.W.2d 752 (1975). Table 30 of the CIR's findings and order included both the local and the national arrays. The Association points out that the local employers contribute substantially less for pensions. The County ranked last, along with St. Joseph Hospital, with an employer contribution of only 4 percent.

The Association is aware that the CIR has no general jurisdiction over contractual disputes and is unable to amend pension plans. See *Plattsmouth Pol. Dept. Coll. Barg. Comm. v. City of Plattsmouth, supra*, but it is the Association's position, nonetheless, that the CIR should have provided for appropriate wage increases in lieu of an order altering pension contributions.

Tables 23 through 29 and table 31 of the CIR's order show that the County fringe benefits are comparable with the prevalent under the titles of longevity and seniority, progression (in general), health insurance, vacations, sick leave, holidays and holiday pay rates, travel expenses, and hours of work. The CIR properly considered all fringe benefits in arriving at an overall compensation package. See *Lincoln Fire Fighters Assn. v. City of Lincoln*, 198 Neb. 174, 252 N.W.2d 607 (1977).

With regard to pensions, the CIR found little evidence beyond the percentage of employer contribution with which it could evaluate the individual pension benefits received. The statistics for the other elements of a pension review were not thorough.

The CIR properly refrained from adjusting wages according to pension benefits received as an issue depending entirely upon speculation, surmise, or conjecture, which is never sufficient to sustain a judgment, and one so based would be set aside by this court. *Lincoln Fire Fighters Assn., supra*.

We reject the Association's contention that the CIR erred in prorating wages paid by employers. Stipulation No. 3 reflects the various wages and contract years utilized for comparison. Adjustments in wages may be made for differences in contract years.

Changes which had taken place from July 1, 1985, until the time of the hearing in February of 1986 were prorated to reflect those changes that would have taken place during the year. For

example, if a wage raise was given in January of 1986 of 6 percent, the figures were updated by 3 percent. This situation involved only four employers selected for the national array.

Under this theory, all wage increases are essentially for the prior year's work. The Association claims that employers who had given a wage increase prior to the contract year in question should have their wage rates adjusted too, so as not to skew the prevalent rate downward. The CIR was not required to impute an increase to the wage rate of an employer whose contract year preceded that of the County.

The fifth assignment of error challenges the CIR's action in ordering certain wage decreases. On cross-appeal, the date of the adjustment is also challenged. It is clearly within the authority of the CIR to order a reduction of wages. This is so whether or not lowering wages was an issue at the bargaining table, because § 48-818 allows for a wage decrease: "[The CIR] *shall establish rates of pay* and conditions of employment *which are comparable to the prevalent wage rates paid . . . .*" (Emphasis supplied.)

The County urges that the CIR should have ordered more wage decreases where it found "anomalies" to exist. The CIR removed certain individuals (six) from any salary adjustment because their titles had been changed from Environmental Health Scientist III to Environmental Health Scientist II. Despite the reclassification, job duties and responsibilities remained the same. Due to this unique circumstance, the salaries of these six highest paid individuals properly remained the same.

A similar situation arose with an individual who was reclassified to a Laboratory Scientist II position from a prior Laboratory Scientist III position. This individual's salary was again properly removed from the wage range.

According to the testimony before the CIR, the individuals in the former Class III had performed the same duties as those in Class II. The promotion to Class III has simply been a way to better compensate some. Salaries of health department personnel had been relatively low, so the third classification was a way of giving some a raise. The CIR must have trusted that these persons' previous wage increases were deserved and

left them undisturbed due to extenuating circumstances upon reclassification.

On the same subject, the CIR did not determine that the County improperly eliminated or consolidated these job classifications. The Association assigns this as error No. 7. In the secretarial positions, a large number of the incumbents were placed in the job classification entitled "Clerk Typist II," notwithstanding the fact that their salary and job duties and responsibilities were greater than the incumbents in the Clerk Typist III position.

> The actions of the County in unilaterally modifying the collective bargaining agreement in existence between the parties without conducting negotiations with the Association is presently at issue in the District Court of Douglas County, Nebraska, in an action captioned, Douglas County Health Department Employees Association, Plaintiff vs. County of Douglas, Defendant and indexed at Docket 849, Page 735.

Brief for appellant at 37.

The CIR rightly refused to enter into the realm of management prerogative and review the reassignment of individuals within certain job classifications or order wages based upon both groups of job classifications.

In *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 14-15, 277 N.W.2d 529, 536 (1979), this court stated:

> The adoption of sections 48-801 to 48-838, R.R.S. 1943, was not intended to in any way remove the lawful responsibility or the proper prerogative of public employers in the exercise of their recognized management rights, or in the exercise of their lawful duties, except as may otherwise have been specifically entrusted to the CIR in resolving industrial disputes as prescribed by the statutes.

> In a similar situation involving a school district, we attempted in some small measure to point out that *there are certain areas under the Nebraska public sector laws which are "rights of management" over which no controversy can be created nor any authority vested in the*

*CIR.* In School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N.W.2d 752, at p. 784, we said, "Without attempting in any way to be specific, or to limit the foregoing, we would consider the following to be exclusively within the management prerogative: The right to hire; to maintain order and efficiency; to schedule work; to control transfers and assignments; to determine what extracurricular activities may be supported or sponsored; and to determine the curriculum, class size, and types of specialists to be employed. . . ."

. . . [N]ot all matters about which the public employer and its employees disagree constitute an industrial dispute over which the CIR obtains jurisdiction.

(Emphasis supplied.)

The wage reduction order that was issued was not retroactive, as it was to take effect on July 10, 1986. The increase, however, was retroactive, taking effect at the start of the contract year in dispute. A retroactive wage increase is within the authority of the CIR.

The CIR did not act arbitrarily in failing to order a retroactive wage decrease, especially in light of difficult implementation and policy questions. The County's sixth assignment of error on cross-appeal is meritless. Also, the employees' failure to receive a 5-percent across-the-board increase tends to buttress the CIR's failure to make the wage decrease order retroactive. However, the 5-percent increase is not in issue.

The Association's sixth assignment of error states that the CIR erred in not determining that the County's action in not instituting an overall 5-percent wage increase given to all other County employees was improper. The Association submits that the County openly discriminated against its employees for exercising their right to come before the CIR. According to Daniel Worthing, the employees did not receive an overall 5-percent wage increase because they had filed this particular action.

The Association cites *AFSCME Local 2088 v. County of Douglas*, 208 Neb. 511, 304 N.W.2d 368 (1981), for the proposition that a reduction of wages was inappropriate in light

of the withholding of the 5-percent wage increase by the County. The issue of the 5-percent wage increase was raised in the Association's second cause of action. Only the first cause of action was addressed by the CIR and is properly before this court. This is admitted in the appellant's brief. Thus, the issue is not addressed here and is to be tried separately.

In its fifth assignment of error on cross-appeal, the County alleges that the CIR erred in failing to consider economic factors in selecting an "out-state" array. We have held that in determining prevalent wage rates for comparable services in reasonably similar labor markets, the CIR is required to weigh, compare, and adjust for any economic dissimilarities shown to exist which have a bearing on prevalent wage rates. *Lincoln Fire Fighters Assn. v. City of Lincoln*, 198 Neb. 174, 252 N.W.2d 607 (1977).

Where it is alleged that economic dissimilarities exist which have a bearing on prevalent wage rates, the burden is on the party making that allegation to establish the bearing of any such economic dissimilarities on prevalent wage rates.

The alleged economic dissimilarities are higher degrees of state unionization and county manufacturing. These have a tendency to increase wage levels in a particular area, according to the County's expert, Dr. Sherman. He testified that those states he identified as having higher degrees of manufacturing and unionization should be excluded from the Association's proposed array. The states which Dr. Sherman would have excluded from which employers were eventually chosen for the CIR's nonlocal array were Wisconsin and Illinois.

On cross-examination, however, it was elicited from Dr. Sherman that no discernible cause and effect could be shown between higher degrees of unionization and manufacturing and salaries paid to health department employees included in the arrays of the parties. The County did not meet its burden of proof on this point.

The County charges that the CIR erred in the preliminary matter of failing to dismiss the Association's petition for failure to obtain proper service of process. The CIR was correct in finding that jurisdiction is invoked when a petition is filed with it, not when service of process is perfected. Neb. Rev. Stat.

§ 48-811 (Reissue 1984) provides for the filing of a petition with the CIR invoking its jurisdiction. Furthermore, Neb. Rev. Stat. § 48-813(1) (Reissue 1984) provides that once the jurisdiction of the CIR is invoked, service may be had upon the adverse party. We hold that the CIR was sufficiently vested with jurisdiction when the Association filed its petition.

The second assignment of error on cross-appeal involves the related issue of service of interrogatories. The County was served with interrogatories when the petition was properly served with a supplemental proof of service upon the county clerk on October 23, 1985. The CIR ruled that its rule 21A would not preclude discovery in this case, but was meant to apply at the time a petition is properly filed with the county clerk. Rule 21A states that interrogatories shall be served at the time the petition is filed. The CIR's overruling of the County's oral objection is consistent with its earlier ruling regarding service of process.

The third challenge on cross-appeal is also without merit, as the CIR properly sustained the Association's objection to the County's filing of a counterclaim beyond the time period prescribed by the rules of the CIR. The answer in this case was filed on October 21, 1985, and the amended answer on November 6. The counterclaim was filed on February 4, 1986. This filing was in violation of rule 6 of the CIR, which states in part that the only responsive pleading that "is permitted shall be an answer in which the responding pleader *shall* assert every defense, objection, and claim . . . ." (Emphasis supplied.)

The CIR's overruling of the County's motion to limit evidence is the subject of the County's fourth assignment of error. The County's written brief in support of the motion is not before this court. The evidence in question consists of the Association's exhibits J-1 through J-4 on job class series progression. The exhibits listed job duties as well as salaries for two job titles in the various comparable regions. The exhibits were relevant, as the Association has requested the CIR to resolve "[a]rrangements of classifications within [a] single job family," as reflected in the report of pretrial conference.

The exhibits did not affect a management prerogative or right delineated in *University Police Officers Union v.*

*University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979). The CIR did not abuse its discretion in receiving the evidence.

We conclude there was sufficient evidence for the CIR to find that wages received by employees of the Douglas County Health Department were not comparable to prevalent wage rates. In selecting the employers to be used for comparison, the CIR considered relevant factors and did not act arbitrarily or capriciously in using the communities it did in fact use. The method of selection employed was in accord with the requirements of § 48-818. See *Fraternal Order of Police v. County of Adams*, 205 Neb. 682, 289 N.W.2d 535 (1980). All assignments of error being without merit, the CIR's order is affirmed.

AFFIRMED.